# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

| | |
|---|---|
| United States of America,<br><br>        Plaintiff,<br><br>v.<br><br>Lewis Heggs, Jr.,<br><br>        Defendant. | Case No. 15-cr-148 (PJS/HB)<br><br>**REPORT AND<br>RECOMMENDATION** |

Bradley M. Endicott, United States Attorney's Office, 316 North Robert Street, Suite 404 St. Paul, MN 55101, for United States of America

Patrick G. Leach, Leach Law Office, 6465 Wayzata Boulevard, Suite 115, St. Louis Park, MN 55426, for Lewis Heggs, Jr.

HILDY BOWBEER, United States Magistrate Judge

This matter is before the Court on Defendant Lewis Heggs, Jr.'s Motion to Suppress Statements, Admissions and Answers [Doc. No. 22]; Motion to Suppress Evidence Obtained as a Result of Search and Seizure [Doc. No. 24]; Motion to Dismiss Indictment for Failure to State an Offense [Doc. No. 36]; Motion to Suppress [Doc. No. 37]; and Motion to Disclose Grand Jury or an Alternative for an In-Camera Inspection or, Alternatively, Motion to Dismiss Indictment [Doc. No. 39]. The matter has been referred to the undersigned for a Report and Recommendation under 28 U.S.C. § 636 and District of Minnesota Local Rule 72.1(a).

On May 12, 2015, Defendant Lewis Heggs, Jr. was charged by Indictment with one count of Felon in Possession of a Firearm-Armed Career Criminal, in violation of 18 U.S.C. § 922(g)(1) and § 924(e) and one count of Felon in Possession of Ammunition-Armed Career Criminal, in violation of 18 U.S.C. § 922(g)(1) and § 924(e).  (Indictment at 1-2 [Doc. No. 10].)  Heggs filed the aforementioned motions on June 8, 2015.  The Government opposed these motions.  At the August 4, 2015, pretrial motions hearing, the Government submitted numerous exhibits outlined in the Exhibit List [Doc. No. 56].  The Government also called Minnesota State Trooper Garrett Bondhus and Sergeant Brent Peterson to testify.  At the conclusion of the hearing, the Court ordered post-hearing memoranda.  Heggs timely filed his memorandum on September 15, 2015 [Doc. No. 60], and the Government timely filed its memorandum on September 29, 2015 [Doc. No. 61].  The Court took the motions under advisement at that time.  For the reasons set forth below, the Court recommends that all of the motions be denied.

I.    **Factual Background**

   A.    **The Traffic Stop**

On December 13, 2013, at approximately 2:00 a.m., Minnesota State Trooper Garrett Bondhus was sitting at a stoplight in his patrol car in Rochester, Minnesota.  (Hr'g Tr. 7, Aug. 4, 2015 [Doc. No. 59].)  Trooper Bondhus has been a state trooper with the Minnesota State Patrol for nineteen years.  (Tr. 6.)  Throughout his employment, he has performed approximately 15,000 to 20,000 traffic stops.  (Tr. 49.)  Hundreds of these stops have involved marijuana.  (Tr. 49.)  While at the intersection, he noticed two vehicles coming up behind him.  (Tr. 9.)  One vehicle, a silver Chevy Impala, appeared to

be going well over the posted forty-five miles-per-hour speed limit for that area. (Tr. 9.) Trooper Bondhus activated his rear antenna through his radar unit and determined the Impala was going fifty-two miles-per-hour. (Tr. 9-10.) Trooper Bondhus then turned on his emergency lights and pulled the vehicle over. (Tr. 12.) There were two occupants in the Impala. (Tr. 12.) After Trooper Bondhus stopped the vehicle, he approached the vehicle to speak with the driver. (Tr. 12.) Trooper Bondhus asked the driver for his driver's license, but the driver stated that he did not have one. (Tr. 12.) The driver identified himself as Lewis Heggs. (Tr. 13.) Heggs also said he was on probation. (Tr. 12.)

During their conversation, Trooper Bondhus observed a strong odor of fresh marijuana coming from the Impala. (Tr. 13.) Trooper Bondhus asked Heggs if there was marijuana in the vehicle. (Tr. 14.) After initially denying the presence of any marijuana, Heggs confirmed that there was marijuana in the vehicle. (Tr. 14.) Trooper Bondhus then asked Heggs to step out of the vehicle, made him put his hands on the vehicle, and searched him. (Tr. 15.) Heggs stated that the marijuana was actually in his coat, which was sitting on the driver's seat. (Tr. 15.) Trooper Bondhus did not find any marijuana on Heggs's person, so he next examined the coat, which was still sitting on the driver's seat. (Tr. 15.) Upon searching the coat, Trooper Bondhus found a half empty box of nine-millimeter ammunition in an exterior pocket and marijuana in an interior pocket. (Tr. 15-16.) An assisting officer weighed the marijuana sometime later and determined there were twenty-eight grams of marijuana. (Tr. 16.)

3

After finding the ammunition, Trooper Bondhus handcuffed Heggs and sat him on the front bumper of his patrol car. (Tr. 17.) Next, Trooper Bondhus asked the passenger, Dawante Adkins, to exit the car and placed handcuffs on him. (Tr. 17-18.) As Trooper Bondhus was walking Adkins to the front of the Impala, he glanced into the vehicle and saw a firearm lying on the passenger's side floor board. (Tr. 19-20.) Trooper Bondhus then moved Heggs to the back of the patrol car and called for backup. (Tr. 20.) Next, Trooper Bondhus examined the firearm, a Taurus .22, and determined it was loaded. (Tr. 20-21.) Trooper Bondhus asked his dispatch to run a criminal history check on Heggs, and the dispatcher told him that Heggs was a felon. (Tr. 22.) Trooper Bondhus then placed Heggs under arrest. (Tr. 22-23.)

    **B.    The Interview**

The next day, at approximately noon, Sergeant Brent Petersen spoke with Heggs. (Tr. 54-55.) Sergeant Peterson had been attempting to talk to Heggs for a couple of days because he considered Heggs a victim in a shooting that had occurred two days earlier. (Tr. 54.) Sergeant Peterson spoke with Heggs about the shooting incident for more than twenty minutes before Heggs brought up his recent arrest and why he was in jail. (Tr. 56.) Sergeant Peterson then read Heggs his *Miranda* rights. (Tr. 57.) Sergeant Peterson recorded his entire conversation with Heggs, and the recording reflects that Sergeant Peterson read Heggs his *Miranda* rights approximately twenty-nine minutes into the interview. (Tr. 61.) Heggs waived his rights and responded that he would give Sergeant Peterson his statement. (Tr. 58.) During the subsequent conversation, Heggs denied that the ammunition was his, but he had no explanation as to why he put the

ammunition in his coat pocket.  (Tr. 59.)  Heggs denied any knowledge that there was a gun in the vehicle.  (Tr. 60.)  The entire conversation, including the twenty-nine minute portion before Sergeant Peterson read Heggs his *Miranda* rights, lasted approximately fifty-five minutes.  (Tr. 61.)

**II.     Discussion**

    **A.     The Stop of Heggs's Vehicle**

Heggs first argues that Trooper Bondhus unlawfully stopped his vehicle.  Heggs states that Trooper Bondhus had no objective basis for suspecting criminal activity before stopping Heggs, and the traffic stop was therefore unlawful.  (Def.'s Mem. Supp. Pretrial Mots. at 2, 7 [Doc. No. 60].)  "'It is well-established that a traffic violation—however minor—creates probable cause to stop the driver of a vehicle.'"  *United States v. Barry*, 98 F.3d 373, 376 (8th Cir. 1996) (quoting *United States v. Barahona*, 990 F.2d 412, 416 (8th Cir. 1993)).  Here, Trooper Bondhus observed Heggs's vehicle appearing to move faster than the posted speed limit.  Trooper Bondhus then used his radar unit and determined that Heggs was in fact driving seven miles-per-hour over the speed limit.  Speeding gives officers probable cause to conduct a traffic stop.  *See United States v. Neumann*, 183 F.3d 753, 756 (8th Cir. 1999) (finding probable cause where defendant was traveling five miles-per-hour over the speed limit).  Heggs has provided no facts showing that Trooper Bondhus's radar unit was malfunctioning.  In fact, as Trooper Bondhus testified, he checked the calibration of his radar unit at the beginning and end of his shift that night.  (Tr. 10-11.)  Thus, Trooper Bondhus had probable cause to stop the vehicle.

### B.  Trooper Bondhus's Search of Heggs and Questioning during the Traffic Stop

Heggs argues that Trooper Bondhus violated his Fourth Amendment rights, and thus, the Court should suppress all evidence and statements against him. (Def.'s Mem. Supp. at 7, 13.) The Fourth Amendment protects "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const. amend IV. [1]

Trooper Bondhus performed several preliminary actions during the traffic stop. "Stopping an automobile and detaining its occupants constitutes a seizure within the meaning of the Fourth Amendment." *United States v. Bloomfield*, 40 F.3d 910, 916 (8th Cir. 1994) (citation omitted). However, during a routine traffic stop, an officer may "conduct an investigation reasonably related in scope to the circumstances that justified the interference in the first place," which includes "asking for the driver's license and registration, requesting that the driver sit in the patrol car, and asking the driver about his destination and purpose." *Id.* at 915 (quotations and citations omitted). Here, Trooper Bondhus asked Heggs for his driver's license, asked him to step out of the vehicle, placed him on the front bumper of the patrol car, and finally placed him in the patrol car. Trooper Bondhus's preliminary actions did not violate any constitutional rights as he conducted a reasonable investigation.

After the initial stop and reasonable investigation, the scope of a traffic stop "can be expanded if the driver's answers and behavior 'support suspicions unrelated to the

---

[1] Heggs does not challenge the legality of his statements made during the traffic stop as involuntary or as obtained in violation of *Miranda*.

traffic offense.'" *United States v. McCarty*, 612 F.3d 1020, 1025 (8th Cir. 2010) (quoting *United States v. Ward,* 484 F.3d 1059, 1062 (8th Cir. 2007)). During the reasonable investigation and its expansion, officers may check the occupant's criminal history, and "may act on whatever information the occupants volunteer." *United States v. Olivera-Mendez*, 484 F.3d 505, 509 (8th Cir. 2007). Officers may also ask about "the driver's itinerary." *McCarty*, 612 F.3d at 1025 (citation omitted). "Whether an officer has reasonable suspicion to expand the scope of a traffic stop is determined by looking at the totality of the circumstances, in light of the officer's experience." *Id.* (citation omitted).

Here, the scope of the traffic stop expanded when Heggs stated that he was on probation and Trooper Bondhus smelled fresh marijuana in the vehicle. Because of his experience with hundreds of traffic stops involving marijuana, Trooper Bondhus had sufficient experience to expand the scope of the stop. Trooper Bondhus thus did not violate any constitutional rights when he questioned Heggs about the presence of marijuana and searched Heggs's person for marijuana. *See id.* (permitting questions about drug trafficking after scope of traffic stop was expanded, and noting that officers "are permitted to graduate their responses to the demands of any particular situation"). In sum, Trooper Bondhus did not violate Heggs's Fourth Amendment rights by questioning and searching him during the stop, and the Court recommends not suppressing his statements.

      C.    **The Search of Heggs's Coat and Vehicle**

Heggs asks the Court to suppress all evidence seized during the traffic stop because the Government violated the Fourth Amendment in obtaining this evidence.

7

(Def.'s Mem. Supp. at 8-13.)  "[T]he ultimate touchstone of the Fourth Amendment is 'reasonableness.'"  *Riley v. California*, 134 S. Ct. 2473, 2482 (2014) (citation omitted).  "Our cases have determined that '[w]here a search is undertaken by law enforcement officials to discover evidence of criminal wrongdoing, . . . reasonableness generally requires the obtaining of a judicial warrant.'"  *Id.* (citing *Vernonia Sch. Dist. 47J v. Acton,* 515 U.S. 646, 653 (1995)).  "In the absence of a warrant, a search is reasonable only if it falls within a specific exception to the warrant requirement."  *Id.*  There was no warrant in this case.

Heggs argues that the search of his vehicle was not a valid search incident to a lawful arrest.  (Def.'s Mem. Supp. at 11-12.)  There are additional exceptions to the warrant requirement, however.  One such exception, the automobile exception, permits warrantless searches of vehicles based on an automobile's "ready mobility" and an "individual's reduced expectation of privacy in an automobile."  *Pennsylvania v. Labron*, 518 U.S. 938, 940 (1996) (quotation omitted).  "As long as the law enforcement officials have probable cause, they may search an automobile without a warrant under the automobile exception."  *United States v. Fladten*, 230 F.3d 1083, 1085 (8th Cir. 2000).  "Probable cause exists when, given the totality of the circumstances, a reasonable person could believe there is a fair probability that contraband or evidence of a crime would be found in a particular place."  *Id.*  Assuming there is probable cause, "the police may search every part of the car and its contents that may conceal the object of the search."  *United States v. Payne*, 119 F.3d 637, 642 (8th Cir. 1997).

Heggs argues that the Court should not consider the additional exceptions to the warrant requirement, including the automobile exception, because Trooper Bondhus did not testify to any of these exceptions. But the purpose of testimony is not to assert legal conclusions. Moreover, the Court finds that Trooper Bondhus had probable cause to search the vehicle. The Court has already concluded that Trooper Bondhus had probable cause to stop Heggs's vehicle. As Trooper Bondhus asked Heggs for his driver's license and identification, which are questions properly within the scope of a traffic stop, *see United States v. Cloud*, 594 F.3d 1042, 1044 (8th Cir. 2010), Trooper Bondhus smelled fresh marijuana emanating from the vehicle. Trooper Bondhus asked Heggs if there was marijuana in the vehicle, and Heggs confirmed there was. These two factors gave Trooper Bondhus probable cause to search the car for contraband, and the search and seizure of the marijuana thus did not violate the Fourth Amendment.

Additionally, the search and seizure of the ammunition did not violate the Fourth Amendment under the automobile exception. Trooper Bondhus was permitted to search anywhere for the contraband, and while searching, he found the ammunition in the same coat in which he found the marijuana. The ammunition was in an exterior pocket of the coat, whereas the marijuana within an interior pocket of the coat. (Tr. 15-16.)

Finally, the search and seizure of the firearm was constitutional under the plain view exception. "If an article is already in plain view, neither its observation nor its seizure would involve any invasion of privacy." *Horton v. California*, 496 U.S. 128, 133 (1990). There are two additional considerations that must be met for the search and seizure to be valid under the plain view exception: (1) the object's "incriminating

character must also be immediately apparent," and (2) "not only must the officer be lawfully located in a place from which the object can be plainly seen, but he or she must also have a lawful right of access to the object itself." *Id.* at 136-37 (quotations and citations omitted). Trooper Bondhus saw the firearm as he escorted Adkins from the vehicle and glanced in the window. Here, the first consideration is met because Trooper Bondhus knew that Heggs was on probation, and Trooper Bondhus knew that it is illegal for felons to possess firearms. The second consideration is met because Trooper Bondhus was lawfully located by the car as he conducted his traffic stop, and he had lawful access to the firearm itself as he searched the car pursuant to the automobile exception.

In sum, the Court concludes that Trooper Bondhus lawfully searched the vehicle pursuant to the automobile and plain view exceptions to the warrant requirement of the Fourth Amendment. Thus, the Court recommends that the evidence seized during the search not be suppressed.

### D.     Heggs's Statements to Sergeant Peterson

Heggs argues that the Court should suppress his statements to Sergeant Peterson because they violate the Fifth Amendment. *Miranda v. Arizona*, 384 U.S. 436 (1966), prohibits the government from "introducing into evidence statements made by the defendant during a custodial interrogation unless the defendant has been previously advised of his fifth amendment privilege against self-incrimination and right to an attorney." *United States v. Chipps*, 410 F.3d 438, 445 (8th Cir. 2005). *Miranda* warnings are required for official interrogations where a person has been "taken into

custody or otherwise deprived of his freedom of action in any significant way." *Stansbury v. California*, 511 U.S. 318, 322 (1994). "[T]he definition of interrogation can extend only to words or actions on the part of police officers that they *should have known* were reasonably likely to elicit an incriminating response." *Rhode Island v. Innis*, 446 U.S. 291, 302 (1980) (emphasis in original). *Cf. Stansbury*, 511 U.S. at 324 (noting that an "officer's subjective view that the individual under questioning is a suspect, if undisclosed, does not bear upon the question whether the individual is in custody for purposes of *Miranda*," and the converse is true "if an officer's undisclosed assessment is that the person being questioned is not a suspect").

Heggs argues his statements were involuntary and that Sergeant Peterson obtained his statements by impermissibly deceptive methods of interrogation. (Def.'s Mem. Supp. at 4.) "A statement is involuntary when it was extracted by threats, violence, or express or implied promises sufficient to overbear the defendant's will and critically impair his capacity for self-determination." *United States v. LeBrun*, 363 F.3d 715, 724 (8th Cir. 2004). Courts judge the voluntariness of a statement by the totality of the circumstances, *id.*, and they consider factors such as "the degree of police coercion, the length of the interrogation, its location, its continuity, and the defendant's maturity, education, physical condition, and mental condition," *Sheets v. Butera*, 389 F.3d 772, 779 (8th Cir. 2004).

Heggs appears to base his argument that Sergeant Peterson used impermissibly deceptive methods of interrogation on the grounds that Sergeant Peterson told him he wanted to talk to him because he believed Heggs was a victim in a shooting case; the two

spoke in a conference room; Sergeant Peterson did not read Heggs his *Miranda* rights until twenty-nine minutes into the conversation; and Sergeant Peterson was not dressed in uniform during their discussion. (Def.'s Mem. Supp. at 5-6.) However, as the Government notes, Sergeant Peterson initiated the conversation with Heggs only to discuss the shooting incident. (Tr. 55.) Sergeant Peterson did not consider Heggs a suspect in the shooting incident, but the victim. (Tr. 54.) Heggs, not Sergeant Peterson, changed the conversation to discuss his recent arrest. (Tr. 56.) Sergeant Peterson testified that initially, he "wasn't real interested in speaking to him about" his recent arrest. (Tr. 56.) After Heggs changed the conversation, Sergeant Peterson read him his *Miranda* rights. (Tr. 57.) Heggs responded in the affirmative that he would waive his rights and give a statement. (Tr. 58.) Sergeant Peterson also testified that Heggs seemed concerned about being in jail, and he assumed Heggs would have spoken to anyone about being in jail. (Tr. 67.)

The Court finds that Heggs's statements were voluntary and Sergeant Peterson did not obtain them through impermissibly deceptive methods. Sergeant Peterson initially spoke to Heggs, the victim, only about the shooting incident. His words and actions were not reasonably likely to elicit an incriminating response, and he did not attempt to overcome Heggs's will through threats or promises. After twenty-nine minutes, Heggs changed the subject of the conversation to his arrest. After the conversation shifted, Sergeant Peterson read Heggs his *Miranda* rights, and Heggs waived those rights. Throughout the conversation, Heggs spoke freely and rationally. Heggs does not claim any physical or mental impairment that would call into question the voluntariness of his

statements. Finally, the fifty-five minute conversation was not unduly burdensome in length. *See Simmons v. Bowersox*, 235 F.3d 1124, 1133 (8th Cir. 2001) (finding an interrogation period of approximately two hours not particularly lengthy). The Court therefore recommends that Heggs's motion to suppress his pre- and post-*Miranda* statements be denied.

### E. Defendant's Motion to Dismiss Indictment for Failure to State an Offense

Heggs argues that the Indictment should be dismissed for failure to state an offense. (Def.'s Mem. Supp. at 13-15.) Heggs asserts that he is not subject to the Armed Career Criminal Act ("ACCA") provision outlined in his Indictment and he does not meet the definition of 18 U.S.C. § 924(e).

The relevant language in the Indictment reads: "Lewis Heggs Jr., . . . having previously been convicted of the following crimes, each of which was punishable by imprisonment for a term exceeding one year, and at least three of which were violent felonies or serious drug offenses committed on occasions different from one another, namely,"

| OFFENSE | JURISDICTION OF CONVICTION | DATE OF CONVICTION (on or about) |
|---|---|---|
| 2nd Degree Sale of a Controlled Substance | Olmsted County, MN | 7/8/2008 |
| Manufacture/Delivery of a Controlled Substance | Cook County, IL | 6/2/2004 |
| Manufacture/Delivery of a Controlled Substance | Cook County, IL | 8/18/2003 |

(Indictment at 1-2.)  Both charges, Felon in Possession of a Firearm - Armed Career Criminal and Felon in Possession of Ammunition - Armed Career Criminal, are based on the same prior drug offenses.  (Indictment at 1-3.)

The ACCA requires imposition of a minimum fifteen-year imprisonment for recidivists convicted of unlawful possession of a firearm where they have at least three prior convictions for serious drug offenses.  18 U.S.C. § 924(e).  The ACCA defines serious drug offenses as those offenses that carry a maximum ten-year sentence.  *Id.* § 924(e)(2)(A).  Heggs argues that the Court should dismiss the Indictment because two of his three prior drug-related felonies are Class II felonies in Illinois that have a maximum sentence of three to seven years, not a ten-year punishment.  (Def.'s Mem. Supp. 13-15.)  The Government responded in its post-hearing memorandum that this issue is premature and a matter for the sentencing court.

The Court agrees that this issue is not suitable for a motion to dismiss the Indictment.  Defendants have a heavy burden when seeking to dismiss an indictment. *See United States v. Adkins*, No. 15-cr-05 (DWF/LIB), 2015 WL 3463377, at *5 (D. Minn. June 1, 2015).  "'Typically an indictment is not sufficient only if an essential element of the offense is omitted from it.'"  *Id.* (quoting *United States v. Adams*, No. 02-cr-404 (JRT/RLE), 2004 WL 1118587, at *3 (D. Minn. May 14, 2004)).  Further, "'[a]n indictment returned by a legally constituted and unbiased grand jury . . . if valid on its face, is enough to call for trial of charge on the merits."  *Id.* (quoting *Costello v. United States*, 350 U.S. 359, 363 (1956)).  Indeed, other District of Minnesota courts have held that "[w]hether the prior convictions are 'violent felonies' as contemplated by § 924(e)(1)

14

is an issue for sentencing." *United States v. Washington*, No. 08-cr-223 (JMR/SRN), 2008 WL 4510992, at *1 (D. Minn. Oct. 2, 2008). Similarly, the Supreme Court has referred to the ACCA as a sentencing enhancement. *See e.g.*, *Taylor v. United States*, 495 U.S. 575, 578 (1990) (defining burglary in context of statute providing sentence enhancement, 18 U.S.C. § 924(e)); *see also United States v. Boaz*, 558 F.3d 800, 806 (8th Cir. 2009) (holding the application of the ACCA sentencing enhancement did not raise defendant's sentence high enough to implicate his due process rights, requiring only a preponderance of the evidence to prove his three prior felonies).

Therefore, the Court recommends that Heggs's motion for dismissal of the Indictment for failure to state an offense be denied.

### F. Heggs's Other Motions

At the motions hearing and corresponding minutes, the Court cautioned that any issue not specifically identified and supported by the post-hearing briefing would be deemed withdrawn, (Tr. 80-81); (Minute Entry [Doc. No. 54]). Heggs explicitly limited the issues before the Court to: (1) dismissal of the Indictment, suppression of statements and seized evidence as a result of Government's unlawful stop of Heggs's vehicle; (2) suppression of Heggs's statements based on the Government's violation of Heggs's constitutional rights; (3) suppression of all evidence against Heggs based on the Government's warrantless search; and (4) dismissal of the Indictment for failure to state an offense. (Def.'s Mem. Supp. at 1-2.) Accordingly, the Court recommends denying as moot: Heggs's Motion to Disclose Grand Jury or an Alternative for an In-Camera Inspection or, Alternatively, Motion to Dismiss Indictment [Doc. No. 39].

### III. Recommendation

Based on the foregoing and all of the files, records, and proceedings herein, **IT IS HEREBY RECOMMENDED** that:

1. Defendant's Motion to Suppress Statements, Admissions and Answers [Doc. No. 22] be **DENIED**;

2. Defendant's Motion to Suppress Evidence Obtained as a Result of Search and Seizure [Doc. No. 24] be **DENIED**;

3. Defendant's Motion to Dismiss Indictment for Failure to State an Offense [Doc. No. 36] be **DENIED**;

4. Defendant's Motion to Suppress [Doc. No. 37] be **DENIED**; and

5. Defendant's Motion to Disclose Grand Jury or an Alternative for an In-Camera Inspection or, Alternatively, Motion to Dismiss Indictment [Doc. No. 39] be **DENIED AS MOOT**.

Dated: October 15, 2015         s/ *Hildy Bowbeer*
                                HILDY BOWBEER
                                United States Magistrate Judge

### NOTICE

**Filing Objections:** This Report and Recommendation is not an order or judgment of the District Court and is therefore, not appealable directly to the Eighth Circuit Court of Appeals.

Under Local Rule 72.2(b)(1), "a party may file and serve specific written objections to a magistrate judge's proposed finding and recommendations within 14 days after being served a copy" of the Report and Recommendation. A party may respond to those objections within 14 days after being served a copy of the objections. LR 72.2(b)(2). All

objections and responses must comply with the word or line limits set forth in LR 72.2(c).

**Under Advisement Date:** This Report and Recommendation will be considered under advisement 14 days from the date of its filing. If timely objections are filed, this Report and Recommendation will be considered under advisement from the earlier of: (1) 14 days after the objections are filed; or (2) from the date a timely response is filed.